IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND

WHEELZ UP, LLC, et al.            :
                                  :
                                  :
     v.                           :    Civil Action No. DKC 24-212
                                  :
ADRIANNE HAROLD CORDERO, et al.   :
                                  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Racketeer Influenced and Corrupt Organizations Act and tort law case is the motion to dismiss filed by Defendant John Daryl Avenido ("Mr. Avenido"). (ECF No. 29). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted.

**I.  Background**[1]

   **A. Factual Background**

Wheelz Up, LLC ("Wheelz Up") is a "last-mile delivery service" based in Maryland. In 2021, Fredrick Lopez ("Mr. Lopez"), Wheelz Up's owner and manager, created Wheelz Up Garage, Inc. ("Wheelz Up Garage"), a company that repairs delivery vehicles. (ECF No. 24 ¶ 13).[2]

---

[1] The following facts are set forth in the amended complaint and construed in the light most favorable to Plaintiff.

[2] Pin cites to documents filed on the court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

On or about January 7, 2021, Wheelz Up contracted with LeasePlan USA ("LeasePlan"), a vehicle leasing company, for vehicle maintenance. (*Id.* ¶ 16). One of LeasePlan's customers is Amazon.com, Inc. ("Amazon"). Under the contract, when Amazon leased a vehicle from LeasePlan, Plaintiffs[3] would perform the vehicle's maintenance and repairs. Wheelz Up would then send an invoice to LeasePlan for the repairs under the eRepair Subscription Agreement. After LeasePlan approved an invoice, the eRepair system generated automatic payments either via credit card or email. Plaintiffs allege on information and belief that invoices under a certain amount were automatically paid by the eRepair system without requiring manual approval from LeasePlan. (*Id.* ¶ 23).

Wheelz Up Garage performed the work and all payments were made to Wheelz Up Garage, but the service contract was between Wheelz Up and LeasePlan.

In August 2020, Wheelz Up Garage hired Mr. Avenido as a mechanic. Shortly thereafter, Mr. Avenido introduced Adrianne Harold Cordero ("Mr. Cordero"), to various Wheelz Up and Wheelz Up Garage employees as his "cousin." (*Id.* ¶ 25). In January 2021, Wheelz Up hired Mr. Cordero as a part time consultant and mechanic

---

[3] The complaint is somewhat unclear on this point. In one place, it states that "Plaintiffs" would conduct the maintenance and repairs (ECF No. 24 ¶ 17), while two paragraphs later, the complaint states that Wheelz Up Garage performed the work (*Id.* ¶ 19). Later, Wheelz Up is alleged to have conducted the repairs. (*Id.* ¶ 21). At this stage, these inconsistencies are not determinative.

advisor. Mr. Cordero also worked as a garage mechanic and as a fleet mechanic on Amazon vehicles for Wheelz Up Garage. On or about February 1, 2022, Mr. Cordero was hired by Wheelz Up as a full-time employee. Upon beginning their employment with Wheelz Up, Mr. Cordero and Mr. Avenido both signed Wheelz Up's Employee Handbook which prohibits, "[a]cts or attempted acts of dishonesty, including falsification of records, theft or conversion of the property of Wheelz Up, LLC, it's [sic] customer's, vendor's or another employee." (*Id.* ¶ 29). When Mr. Cordero began his employment with Wheelz Up, he resided at 3811 Decatur Avenue, Kensington, Maryland 20895. At some point, Mr. Cordero moved to 2012 Baltimore Road, Apartment G22, Rockville, Maryland 20851. Mr. Cordero's last known address while working for Plaintiffs was 70 Upper Rock Circle, Apartment E42, Rockville, Maryland 20850.

In his role at Wheelz Up, Mr. Cordero had access to the eRepair account so that he could submit invoices to LeasePlan. During their time at Wheelz Up, Mr. Cordero and Mr. Avenido had a close relationship and often spent weekends together. Plaintiffs allege on information and belief that at some point Mr. Cordero gave Mr. Avenido property, including a motorcycle. (*Id.* ¶ 34).

On June 20, 2022, while still employed by Wheelz Up Garage, Mr. Cordero registered an LLC with the Maryland Secretary of State under the name "AD Performance LLC." AD Performance LLC's

3

principal address was Mr. Cordero's former residential Upper Rock Circle address.

At some point, Mr. Cordero recruited Mr. Avenido to take on more administrative responsibility for the LeasePlan account and eRepair system. Mr. Avenido demanded a raise for taking on the new role, but Plaintiffs declined to do so. Plaintiffs told Mr. Avenido they would pay him more after he demonstrated he could take on the new role. Mr. Cordero gave Mr. Avenido money for an "advance" to take on the new role. On November 27, 2022, Mr. Cordero was terminated from his position with Wheelz Up. He moved out of state shortly thereafter, but Mr. Avenido maintained access to Mr. Cordero's property that was in Maryland, including vehicles and tools. Plaintiffs allege on information and belief that Mr. Avenido helped Mr. Cordero dispose of certain assets. (*Id.* ¶ 42). Mr. Avenido continued working for Wheelz Up Garage until he resigned on February 24, 2023.

### B. Discovery of the Scheme

Plaintiffs allege on information and belief that around August 2021, Mr. Cordero exploited a vulnerability in the eRepair system that enabled him to collect additional payments from previously closed invoices. (*Id.* ¶ 44). Plaintiffs allege, again on information and belief, that Mr. Cordero orchestrated, and Mr. Avenido was aware of and assisted in, a scheme to divert payments from fraudulently duplicated purchase orders into their own

4

personal accounts. (*Id.* ¶ 45). Plaintiffs allege on information and belief that between October 11, 2021, and December 24, 2021, Mr. Cordero diverted thirty-two payments from duplicated purchase orders. (*Id.* ¶ 46). Plaintiffs allege on belief that Mr. Avenido knew of and assisted Mr. Cordero in accomplishing these submissions. (*Id.*). Plaintiffs allege on information and belief that following the diversion of the thirty-two payments, there was a seventy-three-day period during which no fraudulent transactions were recorded. (*Id.* ¶ 47). Plaintiffs allege on information and belief that between March 8, 2022, and November 22, 2022, 497 payments using fraudulent purchase orders were processed by "AD Performance" or "AD Performance LLC" as the merchant. (*Id.* ¶ 50).

After Mr. Cordero's termination, Plaintiffs changed the password for the eRepair subscription.[4] Plaintiffs allege on information and belief that after Mr. Cordero was terminated, no unauthorized transactions were recorded from November 23, 2022, until January 25, 2023. (*Id.* ¶ 54). After January 25, 2023, Mr. Cordero processed 2,686 fraudulent purchase orders all of which listed "AD Performance LLC or "SQ *AD Performance LLC" as the merchant and the Upper Rock Circle property as the billing address. (*Id.*).

---

[4] Although it is unclear when, Plaintiffs changed the eRepair subscription account password three times in and around 2023. (ECF No. 1 ¶ 53).

5

On October 17, 2023, Jonathan McLaughlin, Wheelz Up's fleet manager, discovered that he no longer had access to Wheelz Up Garage's eRepair account. Shortly after, Plaintiffs discovered that between August 2021 and October 2023 AD Performance received payment for fraudulent invoices totaling $1,336,082.97, none of which was given to Wheelz Up. Approximately $1,255,518.11 was misappropriated after Mr. Cordero no longer worked for Plaintiffs, some of which was misappropriated while Mr. Avenido still worked for Plaintiffs. The next day, Mr. Lopez contacted Mr. Cordero to discuss the billing discrepancies reported by LeasePlan. On or about October 23, 2023, Mr. Cordero called Mr. Lopez and admitted his involvement, but did not specify whether he used Wheelz Up's eRepair account to process the transactions. On December 12, 2023, Wheelz Up received a demand letter from LeasePlan asking Plaintiffs to compensate LeasePlan for the $1,336,082.97 obtained by Defendants.

### C. Procedural Background

Plaintiffs filed the original complaint on January 22, 2024 (ECF No. 1), and an amended complaint on May 15, 2024 (ECF No. 24). Mr. Avenido moved to dismiss the amended complaint on May 29, 2024 (ECF No. 29). Plaintiffs opposed Mr. Avenido's motion to dismiss on June 12, 2024 (ECF No. 44), and Mr. Avenido replied on June 26, 2024 (ECF No. 46).

**II.   Standard of Review**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor."  *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).  A plaintiff's complaint must only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).  A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged."  *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

A fraud claim is subject to the heightened pleading standard of Fed.R.Civ.P. 9(b). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). Rule 9(b) provides that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The circumstances required to be pleaded with particularity "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 313–14 (D.Md. 2000) (quoting *Windsor Assocs., Inc. v. Greenfeld*, 564 F. Supp. 273, 280 (D.Md. 1983)). The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all the facts are learned only after discovery; and to safeguard the defendant's reputation. *Harrison*, 176 F.3d at 784. In line with these objectives, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Id.* Fraud allegations

that fail to meet Fed.R.Civ.P. 9(b) warrant dismissal under Fed.R.Civ.P. 12(b)(6) review.  *See id.* at 783 n. 5.

## III. Analysis

The amended complaint asserts the following counts: violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1964(a) against Mr. Cordero and Mr. Avenido (Count I); tortious interference with a business relationship against Mr. Cordero, Mr. Avenido, and AD Performance, LLC (collectively "Defendants") (Count II); and breach of the duty of loyalty against Mr. Cordero and Mr. Avenido (Count III).  (ECF No. 24).

### A. Information and Belief Pleading

Many of Plaintiffs' allegations relating to Mr. Avenido are made "upon information and belief."  As has been stated before: "Under the pleading standard the Supreme Court of the United States articulated in *Twombly* and *Iqbal*, a complaint's conclusory allegations based solely 'upon information and belief' are 'insufficient to defeat a motion to dismiss.'"  *Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30, 36-37 (D.Md. 2020), *aff'd*, 855 F.App'x 156 (4th Cir. 2021) (quoting *Harman v. Unisys Corp.*, 356 F.App'x 638, 640-41 (4th Cir. 2009)).  Further,

> As Judge Grimm has noted, it is important to differentiate "between a case in which pleading 'upon information and belief' is used as an inadequate substitute for providing detail as to why the element is present in an action . . . [and the] proper use of 'upon

> information and belief,' where a plaintiff does not have personal knowledge of the facts being asserted." *Malibu Media*, 2014 WL 7188822, at *4 (citations and internal quotation marks omitted). "'[P]leading on the basis of information and belief is generally appropriate' where information is 'particularly within defendants' knowledge and control.'" *Kajoshaj v. N.Y.C. Dept. of Educ.*, 543 F.App'x 11, 16 (2ᵈ Cir. 2013) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2ᵈ Cir. 2008)).

*Id.* at 37.

Even if information is "particularly within defendants' knowledge and control," conclusory pleading is not permitted: "Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1224 (3d ed., April 2019 update).

As discussed below, Plaintiffs' amended complaint relies far too heavily on "information and belief" without including sufficient substantive facts in support.

### B. RICO Claim

In Count I, Plaintiffs assert a racketeering claim under RICO's civil provision, 18 U.S.C. § 1964, which provides a cause of action to "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." Plaintiffs allege that Mr. Cordero and Mr. Avenido violated Section 1962(c). (ECF

No. 24 ¶¶ 64-77). Mr. Avenido challenges many aspects of this claim, arguing that Plaintiffs have failed to allege adequately any of the required elements. It will only be necessary to examine some of those elements, however, to resolve the issue.

For a civil RICO claim to survive a Rule 12(b)(6) motion to dismiss, plaintiff must allege "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

First, Plaintiffs provide no factual allegations that Mr. Cordero and Mr. Avenido were engaged in the conduct of an enterprise. Under 18 U.S.C. § 1962(c), it is unlawful:

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"[E]nterprise," as defined in 18 U.S.C. § 1961(4), "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The complaint states only conclusory assertions that "[t]he enterprise is made up of [Mr.] Cordero and [Mr.] Avenido" and that they "entered into the enterprise for the purpose of executing and attempting to execute a scheme to use Plaintiffs' name to misappropriate funds from LeasePlan[.] (ECF No. 24 ¶¶ 67-68). At best, the complaint avers

11

that Mr. Cordero and Mr. Avenido "had a close relationship" and "spent weekends together." (ECF No. 24 ¶ 34). But the complaint contains no factual averments regarding how Mr. Cordero and Mr. Avenido "function[ed] as a continuing unit." *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 473 (D.Md. 2012).

The complaint also fails to allege sufficiently that Mr. Avenido engaged in a pattern of racketeering activity.

Racketeering activity is defined under 18 U.S.C. § 1961(1), as "any act which is indictable" under a number of enumerated criminal provisions, including 18 U.S.C. § 1343 (wire fraud), which Plaintiffs allege here. The elements of wire fraud are (1) a scheme disclosing an intent to defraud, and (2) the use of wire, radio, or television in furtherance of the scheme. Allegations of fraud must state with particularity "the fraudulent acts that form the alleged pattern of racketeering activity" in accordance with Rule 9(b). *Grant*, 871 F. Supp. 2d at 473 (quoting *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (citation omitted)).

As this court has explained:

> To allege a "pattern" of racketeering activity, Plaintiff[s] must show at least two predicate acts of racketeering activity occurring within ten years of each other, 18 U.S.C. § 1961(5),that the acts were related, and that they "amount to or pose a threat of continued criminal activity," *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are

>   interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. 2893 (quoting *Sedima*, 473 U.S. at 486 n. 14, 105 S.Ct. 3275).

*Id.* The United States Court of Appeals for the Fourth Circuit has explained:

>   Continuity . . . refers either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. To satisfy the continuity element, a plaintiff must show that the predicates themselves amount to, or otherwise constitute a threat of, continuing racketeering activity.

*Id.* (quoting *Menasco, Inc.*, 886 F.2d at 683–84 (internal quotation marks and citations omitted)).

>   The Fourth Circuit has expressed reservations about RICO claims where the predicate acts are mail and wire fraud "because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (internal quotation marks omitted). RICO liability is reserved for "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Id.* (quoting *Menasco, Inc.*, 886 F.2d at 684). The pattern requirement thus serves to "prevent . . . ordinary commercial fraud from being transformed into a federal RICO claim." *Menasco, Inc.*, 886 F.2d at 684–85. Accordingly, "[n]otwithstanding the fact that. alleged related acts [may] occur[ ] over a period of years, an allegation of mail and wire fraud against one victim, without more, does not satisfy the continuity element as interpreted by the Fourth Circuit." *Orteck Int'l, Inc. v. TransPacific Tire & Wheel, Inc.*, No. DKC 05–2882, 2006 WL 2572474, at *18 (D.Md. Sept. 5, 2006) (citing *Al-Abood ex rel.*

          *Al-Abood v. El-Shamari*, 217 F.3d 225, 238-39 (4th Cir. 2000)).

*Id.*

Plaintiffs' allegations fail to allege a pattern of racketeering activity. Plaintiffs assert that "on twenty-two occasions in October 2021, [Mr.] Cordero, likely with the assistance of [Mr.] Avenido, misappropriated Plaintiffs' name and processed payments using fraudulent purchase orders of an account not tied with Plaintiffs[.]" (ECF No. 24 ¶ 69). At the outset, Plaintiffs' vague reference to Mr. Avenido's "assistance" does not provide any factual description of how Mr. Avenido was involved in the purported scheme. Additionally, Plaintiffs' allegations fail to set forth Mr. Avenido's role in a "scheme disclosing an intent to defraud." Plaintiffs allege "upon information and belief" that Mr. Avenido assisted Mr. Cordero but they provide no factual allegations as to any specific conduct of Mr. Avenido. These bare, conclusory assertions fail to satisfy the particularity requirements of Rule 9(b).

Finally, the complaint only references conducted directed at Plaintiffs. But "a pattern requires more than just conduct directed at [a single] Plaintiff[ ]." *Davis*, 2010 WL 1375363, at *4; *Orteck Int'l, Inc.*, 2006 WL 2572474, at *18. Indeed, in the absence of allegations of "specific fraudulent conduct perpetuated by any [d]efendant apart from the alleged conduct directed to [p]laintiff[ ]," a RICO claim cannot survive a motion to dismiss.

14

*Davis*, 2010 WL 1375363.  Count I, as it relates to Mr. Avenido, must thus be dismissed.

### C. Tortious Interference with a Business Relationship

In Count II, Plaintiffs allege that Mr. Avenido committed tortious interference with Plaintiffs' business relationships when he, with the other Defendants, "intentionally processed payments using fraudulent purchase orders." (ECF No. 24 ¶¶ 78-84).

Under Maryland law, to succeed on a claim of tortious interference, the following elements must be shown: "(1) intentional and wil[l]ful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 652 (1994). "[T]he two general types of tort actions for interference with business relationships are inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 837, 851 (D.Md. 2005) (quoting *Nat. Design, Inc. v. Rouse Co.*, 302 Md. 47, 69 (1984)).  Plaintiffs seemingly allege the second type of tort action.

15

For liability to attach, the interference must be "wrongful or unlawful." *Travelers Indem. Co. v. Merling*, 326 Md. 329, 343 (1992). The Supreme Court of Maryland "has explained that '. . . an act of tortious interference with economic relations is characterized by the defendant's specific purpose to interfere, and . . . acts which incidentally affect another's business relationship are not a sufficient basis for the tort.'" *Hebbeler v. First Mariner Bank*, No. 17-3461-ELH, 2020 WL 1033586, *18 (D.Md. Mar. 2, 2020) (quoting *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 656 (1994)).

Mr. Avenido challenges the second and third elements of the claim. Mr. Avenido contends that Plaintiffs fail to allege that his conduct was "'calculated to cause damage to the plaintiffs in their lawful business' or that any actions taken by Mr. Avenido were done 'with the unlawful purpose to cause such damage and loss.'" (ECF No. 29-1, at 31). Mr. Avenido further contends that Plaintiffs failed to state "any plausible, non-conclusory allegations that the actions of Mr. Avenido . . . were specifically calculated to cause harm to Plaintiffs' business relationship with LeasePlan, or that he acted with any malice." (ECF No. 29-1, at 31).

Plaintiffs counter that they have satisfied the pleading requirements by specifically alleging "Defendants' conduct was calculated to cause damage to Plaintiffs" and "Defendants acted

16

with malice by processing payments using fraudulent purchase orders for the unlawful purpose of misappropriating funds from clients[.]" (ECF No. 44, at 19-20). Plaintiffs argue that "[c]ourts in this district have found similar claims satisfy the pleading standard" citing to *Doe v. Johns Hopkins Health System Corp.*, 274 F. Supp. 3d 355 (D.Md. 2017). In *Johns Hopkins*, Judge Chuang found that the plaintiff sufficiently alleged an intentional interference with business relations claim. The plaintiff in *Johns Hopkins* alleged that statements known to be false were made by employees of the defendant "without justifiable cause," and were "calculated to interfere and cause damage" which the court found plausible considering the plaintiff's other allegations. *Id.*, at 371. The allegations as to Mr. Avenido are not analogous to those of the plaintiff in *Johns Hopkins*.

Plaintiffs point to several paragraphs of the amended complaint which they contend sufficiently allege their intentional interference claim. (ECF No. 44, at 20-22). All the cited paragraphs contain allegations made "upon information and belief" as to Mr. Avenido's involvement without alleging sufficient facts in support. This type of pleading is insufficient to overcome a motion to dismiss. *Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30, 36-37 (D.Md. 2020), *aff'd*, 855 F.App'x 156 (4th Cir. 2021) (quoting *Harman v. Unisys Corp.*, 356 F.App'x 638, 640–41 (4th Cir.

17

2009)).  Accordingly, Count II, as it relates to Mr. Avenido, will be dismissed.

### D. Breach of the Duty of Loyalty

In Count III, Plaintiffs assert a claim against Mr. Cordero and Mr. Avenido for the breach of the duty of loyalty.  (ECF No. 24 ¶¶ 85-92).  Mr. Avenido argues that Plaintiffs have failed to state a breach of loyalty claim because they have not satisfied the requirements of Rule 9(b).  It is unnecessary to determine the appropriate pleading standard because Plaintiffs' duty of loyalty claim, as to Mr. Avenido, fails for the same reasons as their other claims.  Plaintiffs rely far too much on information and belief pleading without providing the necessary factual support.  Accordingly, Count III, as it relates to Mr. Avenido, will be dismissed.

## IV. Conclusion

For the foregoing reasons, Mr. Avenido's motion to dismiss will be granted.  A separate order will follow.

                                                  /s/
                               DEBORAH K. CHASANOW
                               United States District Judge